4-17-0212 Messerly v. Boehmke. Counsel, would you state your name for the record, please? Yes, sir. Edward McCarthy, attorney for the Boehmke. I'm not, sir. Rick Pacheco, attorney for Robert Boehmke. Okay, thank you. Mr. McCarthy, you're ready to proceed. If it pleases the court, Mr. Berticchio, the case has quite a history. And we've been here one other time on a motion for summary judgment. But I wanted to just share a little bit of the unofficial history as an explanation as to how in the devil a case like this could be filed in 2004 and be before you in 2018. During the time of the case, many unusual things happened. One, one of the counsel, I don't remember who, pardon me? Yeah. Attorney Minow was attorney for the defendants passed away. I personally had two separate bouts of cancer involving operations and chemotherapy. My spouse died and we were up here on a motion for summary judgment. So it is really strung out, but not because I just lay this out for you because my clients were very patient with me and with the circumstances. And I appreciate that of them. So I thought I would mention that to you. Now, three points really on this case. The first one is the court having used an incorrect measure of damages of requirement of damages to be produced by the plaintiff on the settlement issue, damages for settlement. Another one is whether and I've seen no cases on this. Absolutely. One way or the other, whether liability for all damages under the act, excuse me, under the act occur because of a failure to complete the entire disclosure statement. This is a circumstance where the defendant did not answer three or four of the questions were supposed to answer all. And one of them that he didn't answer did eventually produce liability for the settlement damages, which we'll go into in a minute. But if someone or the statute says that the individual shall complete the residential disclosures statement and it shall be given and so on. And there's no room for anything but doing the whole statement and giving it to the prospective buyer. If anyone who does not. Produce this statement in a timely fashion and completed shall be responsible for the actual damages suffered by the. By the buyers. So. As far as the defects in the plumbing system, which is the second area of defects that we experienced in this case, if the plumbing's even if the case is otherwise. He's made a correct statement about the plumbing defects. If there were defects there, would he be responsible for those two? And. Shall be responsible for all defects. That's one of the issues that we think is before the court today. Now, let's just start with the measure of damages. The court did find. That the defendant violated the. Residential Real Property Disclosure Report Act. By not answering item 17, which is essentially whether there is a settlement and other. Problems with the property. The court found that. That he was. That he did not comply with the act. However, the court found that. The evidence of what the damage of the damages. Didn't satisfy. What the court felt. Would be the proper. Evidence of. Substantial evidence of damage. It seems that the trial court made a determination. That there was no evidence. As to what the cost. Of repairs would have been in 1998 as opposed to 2010. And that was the basis for rejecting the claim for damages. Because they were in 2010 dollars. Or more accurately. The 2010 estimate was based on the condition of the property in 2010. Is that accurate? Yes, sir. Actually. The evidence. Presented was. The opinion of what it would cost to repair 2010. Yes. But. This is a case. In which then and the term mitigate. Damages would use from time to time. That is. Contrary to the law. My client testified that he was financially unable. To make those repairs. In 1998. May I interrupt you just for a moment. And ask you a question. Did the evidence establish. Whether or not there had been a continued deterioration. Or continuing settlement of the foundation. From 1998 to 2010. Yes, sir. The. We started actually. With. A condition in 1991. When. The defendant. Approached his insurance company. About. The condition or the damage to the property. And made a mind subsidence. Application. That. Particular individual. Said no, there's no mind subsidence. But there's movement. In the prop. 1991. And that. The conclusion. By the. Letter that he got from the insurance company. So there's. He. Acknowledged. That there was settlement. In his testimony. And. We cited that. In the. In the. Brief. The page of his testimony. Where he said yes. I knew there was settlement. At the time that I sold it. In 1998. So there was settlement. In the property. And the. Idiosyncrasy about settlement. Is that it never gets better. Until you really address. The. Justice Harris asked you. Not whether there was continuing settlement. I think he asked you. Was there additional structural damage. Because of the settlement. Oh yes. In 1998. In 2010. Yes sir. And the evidence shows that. What was that? Okay. Excuse me. The next step. Was. In 2000. Year 2000. Which is another. Report. By. Mr. Costello. Who is a geologist. He was. Sent there because. My clients made. A report about. They thought maybe there was. Mines and silence damage. They didn't know that the plaintiff. Or that the defendant had already done that. And been turned down. They reported it and he. He has. A report that's very thorough with 26 pictures. It has cracks. And everything in it. That shows. That it's. Compare those pictures. With those from 1991. And you see. Substantial. Change. And he said. Mr. Costello in his. Report. He said. As. In his. Opinion expressed on just the very last page of his report. Please remember that much of the damage pre-existed. Domestic lease ownership. Given the nature of the indigenous soil limitations. These damages. If not properly. Repaired. Would only worsen. This is evident. In my opinion. And the damages at the site. Are the result of indigenous soil limitations. In concert with the construction practices employed. Counsel did the structural damages. Increase. Between 1998 and 2000. Yes sir. Okay. And is there evidence. There. And what do you have. If there is evidence. Oh okay. Did it increase. We have. The testimony of my clients. Was that. He couldn't afford to make repairs. Well he didn't even know how much. It was going to take. Or cost to repair it so. Well he couldn't afford it. Yeah. Well he wasn't working. He was. We don't know how much the repair would have been. Yes sir. True. Well. That's true. Well then how do you know if you could. Afford it if you don't even know how much. It's going to be. Well. But we don't. The. The. Theory. Of. Of. Theory of mitigation. One of the theories is. That the plaintiff. Does not have the financial ability. To make. The repairs. The concept of mitigation. Presupposes that there has been a worsening. And. There have been greater damages. That have incurred. Been incurred. During. The intervening time. And so. Just getting back to that initial question. From 1998. To 2010. What additional damage. If any occurred. In regards to the settlement. There's. The. Expert who. Observed it in 2010. Stated that he did not. Know what the damage was. In 2000. Or in 1998. And. I mean. Is there. Can the evidence. Support an inference. That the helitech estimate. In 2010. Is to the cost of repairs. Would have been. Appropriate. As to the condition of the home. In 1998. Do you understand the question. Yes sir. The. There is. First. There's nothing to the contrary. That it would not be. Second. It. The client testified that they. That they did nothing. But they didn't change anything. And. So. Whatever. Happened. Or whatever the condition of the property. Was. Was the natural. Effect. Of the. Of the. Settlement. And. It. It was. What 60,000. $50,000. To repair. In 2010. And. The. What the. Gentlemen in 2010. Provided. A diagram. And he. He showed where the cracks were. Where he was. Repairing it. Where the. Leaks were. How. What had to be done. And he. Put. Estimates for each step. Of the work that had to be done. But. As as I understand. Your question. They're. In comparison. Comparing it. Between what existed in 1998. And what was. What he observed. We there is no evidence. To. There is no evidence. About. How much it would have cost. To have repaired it 1998. No. We just have. The study in 2000. Where they. Said it's going to get worse. It's not repaired it's going to get worse. And we know it didn't get any better. Well the question is did it get worse. That's. I believe yes. I personally believe it got worse. My client. I believe there is. There was testimony about cracks widening. And. And some. Other cracks developing. And yes it did get worse. Yes. Moving on then. We have. The point about the plumbing defects. Here. The client in. 1989 the closing was in. The fall of 1998. 1999 they got. The plumbing was. So poor that they actually went. To the Illinois Department of Public Health. Who said. A. Licensed plumber. Who was. From the department. Who did an analysis of things that had to be done. Or violations. Of the code. To be more specific. And that's. His report. Is in the evidence. Once again. Nothing was done. The. Plaintiff. Then. In preparation for the trial. We had a. Licensed plumber. Illinois licensed plumber. Review. The house and the report. And found that the same. Code sections were being violated. And the same were. Violation was in existence. And therefore. They had a. Plumbing code violation that the same. He gave an estimate to repair the same. Problems that existed when they bought the property. And. And finally. The. Is the question is. Is. A seller responsible. For everything is wrong. If they don't answer all. Of the. All the questions. If they don't give a complete. Report. Are they responsible for everything that's wrong. Or can they. Try to. Hide behind. A. Answer that they claim was correct. Even though it turns out that there are serious. Effects. With the property. And once again I don't think that's been decided. By any court that I. And I'd be interested to hear. What your thoughts were on that. Thank you. All right. Thank you. Mr. Mr. Please. Court. Counsel. Dr. In counsel's presentation. One of the things that he didn't talk about. Is it under the disclosure act. Perhaps the. Most. Significant piece of evidence. That exists in this case. But needs to exist. Is that the. Seller. Knew. Had knowledge. Just for instance. All the plumbing code violations. No evidence whatsoever. Had any knowledge of any plumbing code violations. On plumbing. There is evidence. That. A day or two after the closing in 98. The buyer's wife called up the seller. And said. We've got a leak in the downstairs shower. You know anything about that. He said. Oh yeah. That. You take a wrench and tighten it up. You may need to change the washer. But it's no big deal. Mr. You may be. You have a persuasive argument. That you've made. In regards to plumbing. If you don't mind. Just initially here. If you could focus on the settlement issue. Sure. Sure. First of all. Council misstated. The evidence. There wasn't just a lack of what it cost. From 98. To 2010. What the court found. Was there was no evidence. Of damage. From a material defect. In 1998. That's different than we didn't get. Evaluation of the cost. The only evidence they had. As to damage. Was. That. Cracks. Exist. The only evidence they had. Now. My client. Inadvertently. Didn't answer. Paragraph 17. Or. Question 17. The only evidence. Of damage. Related to settlement. Was. That there were some cracks. In the wall. By the way. My client. Did disclose. Those cracks. In answer. To paragraph. Four. He chose. To say. That's where you tell. There are cracks. In the basement. Well. So using your terminology. Here. In terms of damage. What was the evidence. In regards to damage. In 1998. Compared. To the damage. In 2010. Well. The trial court. Was exactly right. There was no evidence. Of damage. If that's what you want. From a material defect. That existed in 1998. The court found. That because. Not the courts finding. I'm talking about the evidence. I'm talking about the evidence. What did. Mr. Schultz. From Helitech. Testify to. Or. In his report. What was the damage. Mr. Schultz. Declined. To testify. First let me say. The only evidence. Of anything wrong at all. With this house. Related to. This settlement. Was. There was some cracks in the wall. Mr. Schultz. Declined. To give an opinion. As to what damage would have been. In 1998. When asked. And he. Then said something even more important. He said. Just. Cracks in the wall. Is not. Evidence. Of a material. Defect. Damage from. A material. Defect. Let me stop you there. Your client doesn't answer. The questions. There are some. Damages. You're saying though. There was no material. Defect. Does that matter. If he does. If your client doesn't answer. The questions. And there are damages. Isn't he responsible. For the damages. Even if. The damages. Don't equate to a material. Defect. If he had knowledge. He had to have knowledge. He had knowledge. Of the cracks. Well. And he disclosed. That's damage. He disclosed the cracks. He disclosed. He didn't answer. Questions. 1734. He didn't answer. But the only. Evidence. That. The. Of damage. Related. To question. 17. The only. Evidence. The only. Evidence. Was. That there were some. Cracks. Caused. By. Cell. There was no evidence. That it was caused by. There was evidence. That he knew. Of cracks. He did disclose. Those cracks. Just not in response. To 17. But. Most. Importantly. Is. There were two experts. That testified. On behalf. Of the plaintiff. The first one. Who was the guy. That did it in. Ninety. One. Looked at it. For subsidence. Right. When asked. To him. About. Well. Weren't there. Cracks in the wall. He said. It wasn't subsidence. He said. Well. There's no subsidence. And then. You asked him. Well. Was it damage. Caused by. Something. That was a material defect. His response was. I wrote down. Exactly. This. Show me. A piece of concrete. And I'll show you a crack. It wasn't. Damage. Of a material defect. It was. Cracks. Don't call it damage. Don't call it material defect. Call it what the evidence was. It was cracks. Most importantly. That was disclosed. What the trial court. Okay. Let me stop you there. Sure. You're. I'm getting. Confused. There. Was settlement. And your client. Did know about the settlement. And your client. Did not disclose it. Forget the damages. For a second. Is that accurate. No sir. No. That's why I told you. Fine. I told you that. The client misquoted. The evidence. My. Client. Did not. Testify. That he had knowledge. Of settlement. He testified. He had knowledge. Of the cracks. In the wall. Well. Isn't there something. Isn't there evidence. That there. Been an insurance claim. And your client. Had been told. There was settlement. No. That's in there. That's not in the evidence. What my client. Was told. In this report. Was. It is not. Subsidence. These cracks. In the wall. Could be from settlement. But that's not. Saying. That there's damage. Because. As a matter. Of fact. There. Mr. Schultz. The man. Who testified. In 2010. Finally said. What it cost. He said. That. Given. The testimony. Related. To the prior. Issue. The opinion. Of cracks. In 98. He didn't. Say. Those are. My material. Defects. So. All my. Client. Had. In 1991. Was. It's not. Subsidence. You don't get. An insurance claim. It's cracks. That were caused. By settlement. He reported. The cracks. In the basement wall. He disclosed it. And then. There's. No evidence. Anywhere. That those cracks. Were. Classified. As material. Defect. No. He disclosed. The settlement. The. You mean. That they said. It was. Cracks. The house. Is. That the. It's settling. Because the grounds. Moving. Was that disclosed. No. Sir. He disclosed. That there were. Disclosure. Form. Require. That. To be disclosed. If there is. No settlement. Yes. Well. The disclosure. Asks a question. Is there settlement. So. You know. Yes. If you answer. Question 17. Yes or no. It does do that. So. Okay. Seems like. Seems like. Then it's. Required. If you know. The settlement. You got to disclose. Right. He disclosed. The evidence of it. And. Counsel. So. Regardless. Of how you term it. Damage. Material. Defect. Put that aside. Okay. What condition. Or conditions. Was. Helitech. Addressing. In its. Estimate. Of costs. Helitech. Was addressing. What it would cost. To repair. The nature. Of the damages. In 2010. It was settlement. What conditions. It was settlement. It was structural defects. It was. A huge amount. Of damage. To get to the extent. That the damage. Was going to cost more. To fix. Than the sale. Of the house. Back in 98. But. What the trial. Court found. Was. What. Helitech. Testified. To. Didn't. Say. That there were. These. There was. Any damages. In 98. As a matter of fact. I told you. When asked. What about these cracks. That we saw in 98. He said. I don't even know. If that's material. Defect. Okay. Helitech. Wasn't. Providing an estimate. To repair. Cracks. Necessarily. They. Helitech. Was providing. An estimate. To address. Conditions. That existed. And. It's the conditions. That I'm trying to. Ask you. To pinpoint. Or. To identify. Because then. I'm going to ask you. What evidence. Of the existence. Of those conditions. Appears in the record. But. First. What were the conditions. That existed. In 2010. That Helitech. Was addressing. In its estimate. Of costs. Structural repairs. Based on the settlement. Of the walls. That have occurred. And. The. Needed. Treatment. From. Lots of areas. Jacking the house up. So. It's all in that area. But. The second half. Of your question. Shows you. The correctness. Of the trial court's. Ruling. Is that. There was nobody. To testify. That those. Conditions. Existed. As to. Damage. And that's what the trial court. Was finding on damages. In 1998. The only evidence. Was. That there were cracks. In the walls. And that my client. Disclosed them. I don't think. The disclosure report. Requires that when you disclose. You disclose anything. That you know. There's no evidence. Necessarily. That my client said. In these cracks. Are from settlement. And that they will.       He knew that. And that was. The only evidence. That my client. Disclosed them. I don't think. The disclosure report. Requires that when you disclose. And that was not. Disclosed to him. Your honor. Justice Turner. But he did know. That it was settlement. Or ground movement. Which is what. Is included. In question 17. Which he failed to answer. Yes. He did know that. The lady. The man. Who did the report.    They're by settlement. Right. He disclosed. The cracks. The farm. Doesn't. Disclose. The cracks. The farm. Doesn't. Require. That he. Disclose. An analysis. As to where. This came from. But doesn't question. 17. Use the word. Settlement. If question. 17. If the answer. Yes it does. I'm not going to deny that. But. So he should have. Answered that. He should have. Answered it. And the court. Said it. And the court. Said he should have. Answered it. Right. And because of that. The court found. That there was. A failure. To disclose. But that gets you. Then to the court's. Analysis. Of. But I need somebody. To show me. That now that we have. A failure. To disclose. Was what he disclosed. Was. Was what he. Didn't disclose. Something that. Was. Damaged. That then. Progressively. Came to. 2010. And there was. No such evidence. Well. Except that. Costello. Says. It looks. Similar. To. 91. When he's doing this. In 2000. It looks similar. But. The porch. Is at an angle. I see some additional. Damage to. Some brick. Wall. And. He says. These damages. Which he refers. To them as. If not. Properly. Repaired. Will worsen. Yes sir. In 2000. Right. Two years after. It doesn't. Establish. Back in. 1998. What. The damage. Was. And that's. What the trial. Court said. Is the actionable. Time here. Is the time. Of the sale. And because. There was not. Evidence. Of what. Damage. Existed. In 1998. He doesn't. Get to proceed. Then to. This is what. That damage. Cost repair. In 2000. Except that. Costello. Is looking. Back at. 1991. Isn't it. Yes sir. But what I'm. Saying to. There is. Evidence. Of damages. In 91. No sir. No sir. What. Costello saw. In 2000. That he turned. As damage. Was never seen. By my client. Prior to the. Transaction. In 98. What the trial. Court say. In trial. Court's. Absolutely correct. Is that you get. To do this. Progressive nature. Of damage. If you can show. That there was. This. Damage. In 1998. Costello saying. In year 2000. Not addressed. To my client. That. Hey this is. Worse than. What I saw. In you know. Now there's damage. In 98. He said. Most of the damage. Due to during my investigation. Is also listed. In Meredith's. 1991 report. Okay. But you have to look. What Meredith's. Testimony was. As to that. And what he said. Was. The cracks. In the wall. I can't. Say that. They're damaged. I can't say. They're material defect. It's only. What Meredith's. Said. That my client. Would have an obligation. For. It's not what. Opinion. That Costello. Suggested. In 2000. You've got to go. Back to what. Did my client. Know in 98. And what. He should have answered. Question 17. A proper answer. Could just have been. There's cracks. In the walls. But that's all. We had. And that. And he actually. Gave that. In response. To the question. I do want. If you're. Except. Except. Plumbing. I won't mention it. As far as plumbing. There was only. A small defect. And there was no proof. That he had. I want to ask you a question. About the damages. One of the items. Was marked in. Plains exhibit. Numbers. 10. Installation. Of drain system. It was 98. 865. Dollars. Was that. According to the. Expert. Due to. Settle. Notion. This is the. But the plumber. Gave. Yes. I don't know. The numbers. Of the exhibits. I apologize. But yeah. The plumber. No. What was. 9865. Dollars. Not plumbing. This is. Installation. Of drain system. Was that. According. To the expert. Was that. Because of. Seven. I mean. I don't think. I don't think. He testified. To that. I don't think. He testified. He testified. As to what. He didn't give. Causes. To anything. He gave. This is what. I need. To do. And this is what. It costs. But he didn't. Testify. As to. What things were. Caused by. And that. Then he could. If he did that. Well. It's the same thing. That they had. Back in 98. That would have. Been sufficient. Plaintiffs. Exhibit. Seven. Says. 7533. For horizontal. Movement. That sounds like. Means. He's saying. Because of. Seven. Horizontal. Movement. It's got to be. The ground. Doesn't it. What. Yes. I. And then. And then. This is. It is. 26 grand. Eight hundred. Sixty seven dollars. Vertical. Movement. I agree. But this is all. In 2010. I understand that. There's no evidence. That any of that. Was known. Or proven. Existing. In 1998. All right. On. The. Well. I'll. Assume. That. I don't want. To talk about. Plumbing. You have. Don't have any. Problem with it. Counsel. Did misquote. As to what. The defendant. Testified. He testified. Only. He knew. Of cracks. He didn't testify. That he knew. Of settlement. Problems. Whether. He knew. Or not. You can make. That finding. Based on whatever. You are making. On. But he didn't testify. That counsel. Was wrong. And. The issue. Was not. Just. There wasn't. A failure. To give. As a trial. Courts. Now. You agree. That. Mitigation. Of damages. Is an. Affirmative. Defense. It has to be asserted. I agree. With that. Absolutely certain. We didn't assert it. And we didn't argue. At no point. In there. Did we argue. To the court. That there's. This is a issue. Where he failed. To mitigate damages. I don't. Really. Quite understand. What counsel. Is referring to. It has to be an. Affirmative. Defense. And. We. I think. The testimony. That we didn't. Several. Of us. Have. Well. I think. All three. Of us. Have tried. To hone in. On. What exactly. Happened. Between then. 2000. And 2010. Now. Clearly. The cost. Of repairs. Assuming. No. Additional. Structural. Damage. Occurred. Cost of repairs. Is going to be. More than. 2010. In 2000. Just because. Of inflation. Yes sir. Would that be mitigation. Of damages. Or does mitigation. Of damages. Refer to additional. Structural. Damage. Because. The settlement. Problem. Wasn't addressed. That's my question. Well. First of all. I don't. Believe mitigation. As a permanent. Defense. We can't argue that. As to. That they should allow. I'm not trying to. Trap you. At all. I just want to know. If you can answer. My question. Well. The answer is. Clearly. In 2000. What they saw. He predicted. Would get worse. And then. There was evidence. That in 2010. It was worse. But I think. The most important thing. About that is. I'm not. Insulting your. Honors. But. Year 2000. Is really relevant. It's what. What. What was the. What was the. Status. In 98. The guy in 2000. Said. A lot of these. Damages. Were seen. In 91. But. There's no evidence. As to what was there. In 98. And I don't. Think that. I think. The trial court. Was correct. That the evidence. Presentation here. As to. The cracks. And. What. Where they were. From. And what they were. Going to cause. In 98. Was missing from the record. And therefore. The honors. The trial court specified. That to. Accept these. As damages. As conjecture. Or speculation. And that wasn't given. To him. Your. Argument. Is. Plaintiff's. Claim. For damages. Based on. The settlement. Fails. Because of. Failure. Proof. Yes. There is no evidence. Of the. Condition. Or damage. As it existed. In 98. Yes sir. That's what the trial court said. Now. Your honor. I did argue in my brief. That. This court can affirm. For lots of reasons. And the only evidence. In 98. When they did the transaction. As to structural. Damages. Were cracks. And those cracks. Were disclosed. And so. I argued. The trial court was wrong. Imposing. That we knew of structural. We knew of material defects. But. But. But. You know. As to damages. I agree. That's what the trial court found. The trial court was correct. Okay. Thank you. Thank you. All right. Mr. McCarthy. Rebuttal argument. I did state. Correctly. That the. Defendant. Admitted. That he knew. There was. Settlement. The record. Page. 129. Before. I was asking. Under. Examination of the defendant. He had stated that. It was substance. Subsidence or settling. And I said. Question. I'm sorry. I didn't hear that. He says. It was not subsidence. It was settling. Okay. So. That was. What is the date of that letter? He said. He was talking here about the letter. Of October 31st. 1991. So you are aware of settling from that time. At that time. You were aware of settling. Yes. Were you present when Mr. Meredith conducted the inspection? Yes. No. I was not there. And so. So he was. Aware of settling. Where. Mr. Particulo. Is fond of using the term. Material defect. And I believe that. As I understand. Your responses.     With. With. With. With. With. With. With. With. With. With. With. With. With. With.   With. With. With. With. With. Damages from. Self. and. Then. Moving. On. The question. Of. Connecting. 1998. Which is a real squeeze. The the. I don't remember the exact date. But the closing occurred in the fall of 1998. My clients. Saw the problem. Started with the subsidence people. They did a study for four months. In that 2000 report. And that's what's so important about that report. They found. That. In that four months. That the. House moved. Laterally and vertically. Both. In various different directions. It was settling. The. And they said. That. I just. Read you the quote. And it's in my brief. That. Mr. Or. That. Mr. Costello. Stated. That. The. Most. Of. The. Conditions. Pre-existed. The. Messerly. Ownership. Why didn't your. Clients. Get an estimate. Of. What it would cost. To fix it. At that time. We wouldn't. Be here. Today. Probably. If. If. They had done so. Of. 20. 20. Hindsight. On their part. They. Maybe. They could have gotten. An estimate. It's true. But. Mr. Messerly. Was out of work. And they were just trying to figure out. You know. Among other things. They're waiting for. Of. This. Report. And then. They. All of a sudden. They don't. Have. Mind subsidence. And. You know. Where does one. Go from there. Yes. If. It probably. Would have been helpful. To have. To have that. But you do. Have. The condition of the property. You have. 26. Some odd. Pictures. Of. All these cracks. That were in existence. In 2000. All over. The property. And. You have. A year. After the closing. It's practically. 1998. For. As far as structures. Are concerned. And. I think. That. You have enough. And I think. The court. The trial court. Had enough. On the. Basis. Of. This being. Continuing. Damage. Because of. Of. Of. Several. That. Of. The. Bid. In. 2010. Is. An. Accurate. Damage. To. Repair. The property. That man. He. Was going to. Fix it. Stop it. From. Shifting. When. They. Finished their work. It was going to be. A whole. Safe. Non. Settling. The. Property. Mr. McCarthy. You're out of time. Thank you your honor. Okay. Thank you. Thank you both.